UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
YASHUA ANK BEY EL,

                    Plaintiff,

          v.

CITIMORTGAGE, INC.,

                    Defendant.
------------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**

25-CV-2317
(Gonzalez, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Over six years ago, the United States District Court for the Southern District of New York barred *pro se* Plaintiff Yashua Ank Bey El from filing any further actions in that court concerning property located at 393 Montauk Avenue, Brooklyn, New York ("the Property") and the related foreclosure proceedings, without first obtaining permission from that court. *See Ank Bey El v. Knuckles, Komoshinski, Manfro LLP*, No. 19-CV-7632 (CM), Dkt. No. 8 (S.D.N.Y. Dec. 2, 2019).

Plaintiff now comes before this Court, seeking to attack the same judicial foreclosure of the Property, raising the following claims against Defendant CitiMortgage, Inc.: (1) lack of standing to foreclose; (2) fraud in the concealment; (3) fraud in the inducement; (4) intentional infliction of emotional distress; (5) quiet title; (6) slander of title; (7) declaratory and injunctive relief; (8) violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*; (9) violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*; and (10) violations of New York's Foreclosure Abuse Prevention Act ("FAPA"), N.Y. Real Prop. Acts. § 1301; N.Y. Gen. Oblig. Law § 17-105; N.Y. C.P.L.R. §§ 203, 205, 205-a, 213; C.P.L.R. Rule 3217. Dkt. No. 1-2 at 5-18.

Before the Court, on a referral from the Honorable Hector Gonzalez, United States District Judge, is Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 13; *see also* Referral Order dated Oct. 27, 2025.

For the reasons set forth below, the undersigned respectfully recommends that Defendant's motion to dismiss be granted, and Plaintiff be denied leave to file an amended complaint.  The undersigned also respectfully recommends that Plaintiff be directed to show cause as to why the Court should not bar him from filing further actions in the United States District Court for the Eastern District of New York concerning the Property without first obtaining permission from this Court to file such a complaint.

## I.    <u>Relevant Background</u>

"The facts set forth herein are derived from [the] Complaint, the allegations of which are accepted as true for purposes of this report and recommendation, documents that are incorporated by reference, or are otherwise integral to the allegations, in the Complaint, and documents of which the Court takes judicial notice, including documents filed in a related state court foreclosure proceeding."  *Harriott v. Nationstar Mortg. LLC*, No. 17-CV-4748 (MKB) (VMS), 2018 WL 4522102, at *1 (E.D.N.Y. Aug. 17, 2018), *report and recommendation adopted*, 2018 WL 4853045 (E.D.N.Y. Sep. 28, 2018) (citations omitted); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (stating that courts "may . . . look to public records, including complaints filed in state court, in deciding a motion to dismiss"); *Romaka v. H&R Block Mortg. Corp.*, No. 17-CV-7411 (JS) (ARL), 2018 WL 4783979, at *3 n.4 (E.D.N.Y. Sep. 30, 2018) ("The Court may take judicial notice of the filings in the Foreclosure Action.").

These documents include: the April 30, 2007 deed conveying title ownership of the Property to non-party Christopher Celestine, recorded in the land records for Kings County, New York, on August 14, 2007 (Dkt. No. 13-3); the April 30, 2007 promissory note ("Note") executed by Celestine in the original amount of $707,400 (Dkt. No. 1-2 at 14; Dkt. No. 13-4); the April 30, 2007 mortgage ("Mortgage") executed by Celestine, recorded in the land records for Kings County, New York, on June 7, 2007 (Dkt. No. 1-2 at 14; Dkt. No. 13-5); the assignment of the Mortgage ("Assignment") to Defendant, a subsidiary of Citibank, recorded in the land records for Kings County, New York on October 9, 2008 (Dkt. No. 13-6); the complaint filed by Defendant in the underlying foreclosure action, *CitiMortgage, Inc. v. Celestine*, Index No. 15792/2008 (N.Y. Sup. Ct., Kings Cnty.) (the "Foreclosure Action") (Dkt. No. 1-2 at  65-74; Dkt. No. 13-7); the November 16, 2010 deed conveying title ownership of the Property to the Yashua Ank Bey El Trust, recorded in the land records for Kings County, New York on December 22, 2010 (Dkt. No. 13-8); a 2018 complaint filed in the SDNY titled *Yashua Ank Bey El v. CitiMortgage, et al.*, No. 18-CV-957 (S.D.N.Y.) ("*Bey El I*") (Dkt. No. 13-9); a partial dismissal order in *Bey El I* (Dkt. No. 13-10); a dismissal order in *Bey El I* (Dkt. No. 13-11); the Judgment of Foreclosure and Sale by the Supreme Court of the State of New York, Kings County from the Foreclosure Action (Dkt. No. 13-12); Foreclosure Action, Dkt. No. 11[1]; Plaintiff's November 24, 2018 "affidavit of

---

[1] The docket of the Foreclosure Action reflects that the action was converted to e-filing on March 21, 2021. Prior to that date, all the documents are available at the New York State Supreme Court, Kings County, Clerk's Office website, which does not use docket numbers for the filing of documents.  Kings Cnty. Clerk's Office, https://iapps.courts.state.ny.us/webccos/kingscc/ (last visited Dec. 11, 2025).  After that date, some documents are available through the Kings County Clerk's Office website, and some are available through New York State Courts Electronic Filing ("NYSCEF"), which uses docket numbers.  NYS Courts Elec. Filing, https://iapps.courts.state.ny.us/nyscef/HomePage (last visited Dec. 11, 2025).

All citations to the Foreclosure Action that have docket numbers refer to a filing on the NYSCEF docket. All citations to the Foreclosure Action that do not have docket numbers refer to filings made to the New York State Supreme Court, Kings County, Clerk's Office website.

satisfaction" of the Mortgage (Dkt. No. 13-13); a 2019 complaint in *Ank Bey El v. Knuckles, Komoshinski, Manfro, LLP, et al.*, No. 19-CV-7632 (S.D.N.Y.) ("*Bey El II*") (Dkt. No. 13-14); a dismissal order in *Bey El II* (Dkt. No. 13-15); an order in *Bey El II* barring Plaintiff from filing any further actions in the SDNY concerning the Property and the related foreclosure proceedings without obtaining permission from that court, pursuant to 28 U.S.C. § 1651 (Dkt. No. 13-16); the Referee's Report of Sale filed in the Foreclosure Action (Dkt. No. 13-17; Foreclosure Action, Dkt. No. 15); the Referee's May 30, 2023 deed ("Referee's Deed") conveying title ownership of the Property to Defendant following a duly-noticed foreclosure sale, recorded in the land records for Kings County, New York on June 7, 2023 (Dkt. No. 13-18); the Notices of Pendency and Renewals filed in the Foreclosure Action and recorded in the land records for Kings County, New York on June 2, 2008, September 11, 2013 and October 20, 2016, respectively (Foreclosure Action, Notices of Pendency dated June 2, 2008, Sep. 11, 2013, and Oct. 20, 2016; Dkt. No. 13-19; Dkt. No. 22 at 9, 15); Plaintiff's quiet title action in the Supreme Court of the State of New York, Kings County, titled *Yashua Ank Bey El v. CitiBank, Inc., et al.*, Index No. 543/2023 (N.Y. Sup. Ct., Kings Cnty. 2023) ("*Bey El III*") (Dkt. No 13-20); a dismissal order in *Bey El III* (Dkt. No. 13-21); and Plaintiff's quiet title action in the Supreme Court of the State of New York, Kings County, titled *Yashua Ank Bey El Trust v. CitiMortgage, Inc., et al.*, Index No. 8/2025 (N.Y. Sup. Ct., Kings Cnty. 2025) ("*Bey El IV*") (Dkt. No. 13-22).

The following documents filed on the public docket in the Foreclosure Action are further subject to judicial notice: the Summons and Complaint dated May 30, 2008; Decision/Order dated December 3, 2013; Plaintiff's "Third Party Summons" and "Verified Counter Complaint" dated August 19, 2014; Decision and Order dated March 25, 2015; Notice Pursuant to Rule NISI Motion to Compel Motion for Summary Judgment filed by Plaintiff dated September 7, 2016; Order dated

4

May 7, 2018, Affidavit for Void Judgment and to Set Aside Order dated July 20, 2018; Order dated December 6, 2018; Affidavit Notice of Facts filed by Plaintiff dated August 12, 2019; Proposed Order to Show Cause filed by Plaintiff dated September 17, 2019; the court's Declination to Sign Plaintiff's Proposed Order to Show Cause dated September 20, 2019; Plaintiff's Objection to Foreclosure Sale dated October 1, 2019; Plaintiff's Affidavit of Fact dated March 15, 2022; Plaintiff's Affidavit Writ of Quo Warrant dated March 15, 2022; Plaintiff's Affidavit of Fact— Writ of Error dated March 31, 2022; Plaintiff's Affidavit of Fact—Default Judgment dated March 31, 2022, Plaintiff's Affidavit of Fact, Writ of Error, Amended dated May 9, 2022; Plaintiff's Affidavit of Fact—Default Judgment, Amended dated May 9, 2022; Plaintiff's Affidavit of Status and Eternal Notice, amended dated May 9, 2022; Plaintiff's Amended Affidavit of Fact—Writ of Error dated May 24, 2022; Plaintiff's Amended Affidavit of Fact, Writ of Error dated March 31, 2023; and Plaintiff's Affidavit dated January 3, 2025.

### A.    The Foreclosure Action

On April 30, 2007, non-party Christopher Celestine executed the Note, which obtained a loan for the Property in the original amount of $707,400. *See* Dkt. No. 1-2 at 14 (Plaintiff attaching a copy of the Mortgage that references the Note that Christopher Celestine borrowed $707,400 from Cambridge Home Capital, LLC); Dkt. No. 13-4. Celestine executed the Mortgage, and conveyed the Property to Mortgage Electronic Registration System, Inc, ("MERS"),[2] as nominee

---

[2] "In 1993, as mortgage securitization became widespread, mortgage industry participants created MERS to facilitate quick, low-cost transfers of mortgage interests." *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 388 (E.D.N.Y. 2014) (Spatt, J.) (quotation omitted). "Under the public recording system, each transfer of a note triggered fees and potential for 'delays . . . by local recording offices, which were [subject to] . . . complex local regulations and database systems that had become voluminous and increasingly difficult to search.'" *Id.* (quotation omitted). "MERS allowed member companies to avoid these fees and delays by 'appoint[ing] MERS to act as their common agent on all mortgages they register in the MERS system.'" *Id.* (quotation omitted). "With MERS as the mortgagee of record, MERS members could exchange property interests without the need to publicly record the transfers. In short, 'MERS is a

on behalf of Cambridge Home Capital, LLC, and Cambridge Home Capital, LLC secured its interest in the Property by virtue of a deed of trust recorded on June 7, 2007 in the land records for Kings County, New York.  *See* Dkt. No. 1-2 at 14 ("For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) the following described property"); Dkt. No. 13-5.  The Mortgage was subsequently assigned to Defendant, which is a subsidiary of Citibank, N.A., via the Assignment in the land records for Kings County, New York on October 9, 2008.  *See* Dkt. No. 13-6.

Celestine defaulted under the terms of the Note and Mortgage by failing to pay the December 1, 2007 installment.  *See* Dkt. No. 13-7 at 6.  Consistent with the Mortgage, Defendant commenced the Foreclosure Action in the Supreme Court of the State of New York, Kings County. *See id*.; *see also* Dkt. No. 1-2 at 4 ("The Mortgage secured a promissory note that entered default in or before 2008, triggering the right to foreclose."); Dkt. No. 1-2 at 65-74.

On November 16, 2010, Celestine conveyed title to the Property to the Yashua Ank Bey El Trust via a deed recorded in the New York City Department of Finance, Office of the City Register.  *See* Dkt. No. 13-8; *see also* Dkt. No. 1-2 at 4 ("Plaintiff, Yashua Ank Bey El, acquired and maintained the Property"); Foreclosure Action, Decision and Order dated Mar. 25, 2015, at 3 ("Meanwhile, during the pendency of the [F]oreclosure [A]ction, Celestine transferred the property to the Bey Trust for $10.00 by a November 16, 2010 bargain and sale deed (November 10 Sale).").

On or about December 2013, Celestine, as *pro se*, argued in the Foreclosure Action that the mortgage was discharged based on the "redemption theory" that the United States went bankrupt when it rejected the gold standard in 1933, and thereafter the United States covered the country's debt by converting the physical bodies of its citizens into assets.  *See* Foreclosure Action,

---

private, contractual superstructure that is grafted onto the public landrecord[ing] system.'"  *Id.* at 389-90 (quotation omitted).

Decision/Order dated Dec. 3, 2013.  The Supreme Court of the State of New York, Kings County, found Celestine's argument meritless and held that "there was no discharge of the mortgage."  *Id.*

On August 19, 2014, Plaintiff filed a "Third Party Summons" and "Verified Counter Complaint" asserting that the foreclosure complaint is based on "false claims and fraud upon the court."  *See* Foreclosure Action, "Third Party Summons" and "Verified Counter Complaint" dated Aug. 19, 2014.  On March 25, 2015, the Supreme Court of the State of New York, Kings County, rejected Plaintiff's argument and held that the "Verified Counter Complaint" fails to assert "any specific allegations supporting a fraud claim, and failed to meet the particularity requirement of N.Y. C.P.L.R. § 3016.  *See* Foreclosure Action, Decision and Order dated Mar. 25, 2015.

On September 7, 2016, Plaintiff filed a "Notice Pursuant to Rule Nisi Motion to Compel Motion for Summary Judgment."  *See* Foreclosure Action, Notice Pursuant to Rule Nisi Motion to Compel Motion for Summary Judgment dated Sep. 7, 2016.  By Order dated May 7, 2018, the Supreme Court of the State of New York, Kings County, found that Plaintiff is a "non-party and has not sought to intervene in this action," and, accordingly, "does not have standing to bring the instant motion"; the state court also granted Defendant's motion for Judgment of Foreclosure and Sale.  *See* Foreclosure Action, Order dated May 7, 2018 (citing *In re Fotiades*, 800 N.Y.S.2d 748 (2d Dep't 2005)).  On July 20, 2018, Plaintiff filed an "Affidavit for Void Judgment and to Set Aside Order."  *See* Foreclosure Action, Aff. for Void J. and to Set Aside Order dated July 20, 2018.

On July 30, 2018, the Supreme Court of the State of New York, Kings County, entered a Judgment of Foreclosure and Sale on the Property.  *See* Dkt. No. 13-12 at 1, 10; *see also* Foreclosure Action, Dkt. No. 11.  The court appointed a Referee to make the sale of the Property.  *See* Dkt. No. 13-17 at 1.

On December 6, 2018, the Supreme Court of the State of New York, Kings County, held as follows:

> Non-party movant Yashua Ank Bey El movant's motion . . . is <u>denied</u>. By this Court's May 7, 2018 order, the Movant's previous motion was denied as he was a non-party and had not sought intervention. Thus, he lacked standing to bring the previous motion (*see generally Matter of Fotiades*, 21 AD3d 898 [2d Dept 2005]). Movant fails to seek intervention in the instant application, therefore the movant still lacks standing to bring this motion.

Foreclosure Action, Order dated Dec. 6, 2018 (emphasis in original).

On August 12, 2019, Plaintiff filed an "Estoppel of Non Judicial Sale" which cited to the federal crime of obstructing mail, the Paperwork Reduction Act, and Uniform Residential Mortgage Satisfaction Act ("URMSA"), among others. *See* Foreclosure Action, Estoppel of Non Judicial Sale dated Aug. 12, 2019. Plaintiff then filed a proposed order to show cause dated September 17, 2019, which if granted, would have stayed the completion of the foreclosure and sale. *See* Foreclosure Action, Proposed Order to Show Cause dated Sep. 17, 2019. The Supreme Court of the State of New York, Kings County, declined to endorse the proposed order on September 20, 2019. *See* Foreclosure Action, Declined Order to Show Cause dated Sep. 20, 2019. On October 1, 2019, Plaintiff filed an objection to the foreclosure and sale. *See* Foreclosure Action, Obj. to Foreclosure and Sale dated Oct. 1, 2019.

The Supreme Court of the State of New York, Kings County, converted the Foreclosure Action to e-filing on March 21, 2021. Between 2022 and 2025, Plaintiff continued to file various objections to the foreclosure in the Kings County Clerk's Office, but not on NYSCEF. *See, e.g.*, Foreclosure Action, Pl.'s Aff. of Fact dated Mar. 15, 2022; Pl.'s Aff. Writ of Quo Warrant dated Mar. 15, 2022; Pl.'s Aff. of Fact—Writ of Error dated Mar. 31, 2022; Pl.'s Aff. of Fact—Def. J. dated Mar. 31, 2022, Pl.'s Aff. of Fact, Writ of Error, Am. dated May 9, 2022; Pl.'s Aff. of Fact—Def. J., Am. dated May 9, 2022; Pl.'s Aff. of Status and Eternal Notice, Am. dated May 9, 2022;

Pl.'s Am.—Writ of Error dated May 24, 2022; Pl.'s Am. Aff. of Fact, Writ of Error dated Mar. 31, 2023; and Plaintiff's Aff. dated Jan. 3, 2025. No action appears to have been taken on these filings.

Meanwhile, on April 27, 2023, the Referee sold the Property through public auction, with sale to Defendant as the highest bidder. Dkt. Nos. 13-17, 13-18. On June 7, 2023, the Referee's Deed recorded the foreclosure sale and conveyed title in the Property to Defendant. *See id.* On June 8, 2023, the Referee filed his notice of sale, which concluded the Foreclosure Action. *See* Dkt. No. 13-17.

### B.    Plaintiff's Allegations

In the present federal action, Plaintiff challenges the propriety of the foreclosure sale of the Foreclosure Action. Dkt. No. 1-2 at 6. Plaintiff alleges that "[t]he foreclosure action was commenced and was not completed within six years of default or acceleration." Dkt. No. 1-2 at 4. Per Plaintiff, "Defendant failed to timely prosecute foreclosure, and the statute of limitations expired in 2014." *Id*. Plaintiff, in contrast, "acquired and maintained the Property, perfected a judgment lien, and holds priority through UCC-1 filings." *Id.* The Complaint alleges that Defendant "assert[s] baseless claims via fraudulent assignments and an unlawful foreclosure action (Index No. 15792/2008), which is time-barred." *Id.* at 6.

The basis of Plaintiff's allegations is that the Note was "insured by the Federal Housing Administration and upon default of the promissory note, the FHA insurance policy paid the mortgage Note in full as outlined on form **RD451-20 Under The FHA insurance (Case No. 374-4596085-703).**" Dkt. No. 1-2 at 22 (emphasis in original); *see also id.* at 8 ("**The FHA insurance (Case No. 374-4596085-703)** paid the loan in full in 2007" (emphasis in original)).

In support of his argument, Plaintiff attaches a document, purportedly from the United States Department of Agriculture Rural Development ("USDA") titled "Notice and

Acknowledgement of Final Payment" dated June 8, 2008. Dkt. No. 1-2 at 17, 59. As discussed further below, the document is in poor quality and appears to contain a white redaction at the top left portion of the document. *Id.* The document also appears to have a typo for the name of the borrower as "ChristopherC elestine" [*sic*]. *Id.* It states, "this note is functus officio as of assignment date 5-8-2008," and the document cites to law without providing any context, "Gordon vs. Wansey and the Uniform Residential Mortgage Satisfaction Act of 2004, Section 203, [*sic*] secured creditor to submit satisfaction for recording liability for failure." *Id.* Plaintiff signed the document as "Executor, Private Banker, Receiver." *Id.*

Elsewhere in the Complaint, Plaintiff attaches a "Notice of Default," which states that the notary public, by signing the document, "for the reason **dishonor by non-performance/nonresponse,** does publicly and solemnly certify the dishonor as against all parties it may concern for default on the instrument(s) by reason of non-performance/non-response." Dkt. No. 1-2 at 75 (emphasis in original). Also attached to the Complaint is the "Certification of Non-Response/Non-Performance," where a notary public "for the reason of **dishonor by non-response/non-performance**, does publicly and solemnly certify the dishonor as against all parties." *Id.* at 78 (emphasis in original). Finally, an "Affidavit of Satisfaction" states that a "Notary as Satisfaction Agent, acting for and with the authority of the landowner as heir to the land and in conjunction with named Grantor Christopher Celestine," has reasonable grounds to believe that, *inter alia*, "the secured creditor has received full payment or line of credit for performance of the balance of the obligations secured by the security instrument." *Id.* at 82.

## C.    SDNY Litigation

Separate from the instant action, Plaintiff has filed two cases in the SDNY concerning the same Foreclosure Action. *See Bey El I*, Dkt. No. 1 at 19 (S.D.N.Y. Feb. 2, 2018); *Bey El II*, Dkt.

No. 3 at 26 (S.D.N.Y. Aug. 29, 2019). The first SDNY action, *Bey El I*, was filed on February 2, 2018 and was dismissed because Plaintiff failed to prosecute the matter. *See Bey El I*, Dkt. No. 1 (S.D.N.Y. Feb. 2, 2018); Dkt. No. 18 (S.D.N.Y. July 23, 2018).

In the second SDNY action, *Bey El II*, Plaintiff filed a complaint on August 13, 2019, asserting claims under the False Claims Act, 31 U.S.C. §§ 3729-3733, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964, the Freedom of Information Act, 5 U.S.C. § 552, the Fraud Enforcement and Recovery Act, 31 U.S.C. §§ 3729(a)(1) and (a)(2), the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5, 123 Stat. 115 (codified in scattered sections of 26 U.S.C.), the Helping Families Save Their Homes Act, 15 U.S.C. § 1601, and the Uniform Residential Mortgage Satisfaction Act. *See Bey El II*, Dkt. No. 2. There, Plaintiff alleged that "Debt-Collector(s) knowingly and willfully plan[n]ed and committed Constructive Acts of fraud by filing a Foreclosure case in New York Supreme Court and foreclosure [*sic*] 360 Adams [S]treet **index #15792/08**." *Bey El II*, 2019 WL 4805214, at *2 (emphasis in original).

The *Bey El II* court dismissed Plaintiff's complaint. *Bey El II*, 2019 WL 4805214, at *2-3. First, the SDNY court found that Plaintiff lacked standing for the False Claims Act. *Id.* at *3. Next, the court dismissed all remaining claims as frivolous and malicious under 28 U.S.C. § 1915(e)(2)(B)(i) because the court found that Plaintiff appeared to have attached to his complaint fabricated documents related to the Foreclosure Action. *Id.* at *2. Finally, the *Bey El II* court directed Plaintiff to show cause regarding why he should not be barred from filing any further actions in SDNY concerning the Property and the related foreclosure proceedings without obtaining prior permission from the court.[3] *Id.*

---

[3] In its opinion, the SDNY court also noted that "Plaintiff was found guilty of falsely assuming and pretending to be a diplomatic, consular, and other official from a foreign country, that is, the 'Moorish' nation." *See Bey El II*, 2019 WL 4805214, at *2 n.5 (S.D.N.Y. Oct. 1, 2019).

11

On December 2, 2019, the *Bey El II* court barred "Plaintiff from filing any further actions in [the SDNY] concerning the [Property] and the related foreclosure proceedings without obtaining permission from this Court to file his complaint" under 28 U.S.C. § 1651. *Bey El II*, Dkt. No. 8.

### D.    Recent State Court Litigation

On August 1, 2023, Plaintiff commenced *Bey El III* in the Supreme Court of the State of New York, Kings County, against Defendant, as well as "Cenlar FSB, Jane [F]raser, Patricia Bracey," and "Uri Digmi." *Bey El III*, Dkt. No. 13-20 at 1. Plaintiff did not properly serve the defendants with the summons and complaint and the action was dismissed without prejudice. *See Bey El III*, Dkt. No. 13-21.

On January 3, 2025, Plaintiff filed *Bey El IV* in the New York State Supreme Court, Kings County, against Defendant, as well as "Registration System (MERS)," "Uri Digmi" and John Does 1-10. *See* Dkt. No. 13-22. Defendant removed *Bey El IV* to the EDNY on February 6, 2025. *See Bey El IV*, No. 25-CV-699 (HG), Dkt. No. 1. On February 11, 2025, the court issued an order that it must

> "consider whether all parties before the [C]ourt are properly represented even in cases where the parties themselves do not raise the issue." *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). According to the Complaint filed in state court, Plaintiff is 'Yashua Ank Bey El Trust.' *See* ECF No. [1-2] at 6. But separately, Plaintiff calls itself 'an adult domiciled in Brooklyn.' *See id.* If Plaintiff is indeed a trust, it must be represented by an attorney. *See, e.g.*, *Brookins v. Figuccio*, No. 23-cv-4429, 2023 WL 6442940, at *1 (E.D.N.Y. Sep. 29, 2023) ("Though Rule 17 allows a trustee to *sue* in his own name, it does not allow him to *represent* the interests of the trust as a non-attorney.").

*Bey El IV*, Text Order dated Feb. 11, 2025 (emphasis in original). After Plaintiff failed to respond to the Court's order, the Court entered a text order dismissing the case. *See Bey El IV*, Text Order dated Mar. 4, 2025.

E.       The Present Litigation

On April 11, 2025, Plaintiff filed the instant Complaint in the Supreme Court of the State of New York, Kings County.  *See* Dkt. No. 1-2.  On April 25, 2025, Defendant removed the action to this Court, alleging that this Court has federal question subject matter jurisdiction stemming from Plaintiff's TILA and RESPA claims.  *See* Dkt. No. 1 ¶ 7.

On May 2, 2025, Defendant filed a pre-motion conference request in anticipation of its motion to dismiss.  Dkt. No. 5.[4]  On May 16, 2025, Plaintiff filed a motion to remand to state court. Dkt. No. 7.

On May 27, 2025, the Court denied Plaintiff's motion to remand this matter to state court. *See* Text Order dated May 27, 2025.  The Court added that before proceeding to pre-motion practice regarding Defendant's motions,

> [T]he Court must "consider whether all parties before the [C]ourt are properly
> represented even in cases where the parties themselves do not raise the issue."  *See*
> *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010).  As the Court has previously raised
> in a related case, *see Yashua Ank Bey El Tr. v. CitiMortgage, Inc.*, No. 25-cv-00699,
> Feb. 11, 2025, Third Text Order (E.D.N.Y. filed Feb. 6, 2025), the Court [] is
> concerned about the nature of Plaintiff, as he again represents that he is a trust.  *See,*
> *e.g.*, ECF No. [1-2] at 6.  As before, on or before June 6, 2025, Plaintiff is
> ORDERED to file a letter describing the nature of Plaintiff in this action.  Plaintiff
> is warned that if it is a trust and fails to obtain counsel, the Court will dismiss this
> action without prejudice.  *See Whitfield v. N.Y.C. Hous. Auth.*, No. 22-cv-3737,
> 2023 WL 6385821, at *2 (E.D.N.Y. Sep. 29, 2023).

*Id.*

On June 5, 2025, Defendant moved for Plaintiff to be deemed a vexatious litigant.  *See* Dkt. No. 8.  Also on June 5, 2025, Plaintiff clarified that he was representing only himself.  *See* Dkt. No. 9.

---

[4] There appears to be a duplicate pre-motion conference letter at Dkt. No. 6.

On June 9, 2025, the Court ordered that Plaintiff may proceed to represent himself here *pro se*, as he was not representing a trust. *See* Text Order dated June 9, 2025. The Court also denied Defendant's motion to deem Plaintiff a vexatious litigant, without prejudice, but noted that Defendant may renew its request in motion to dismiss practice. *Id.* On the same date, Plaintiff filed a motion for reconsideration of the Court's May 27, 2025 order. *See* Dkt. No. 17.[5]

On June 18, 2025, the Court set a briefing schedule for Defendant's motion to dismiss. *See* Text Order dated June 18, 2025. The Court also ordered as follows:

> Although the Court's prior order expressly asked Plaintiff to explain whether Plaintiff believes the complaint can be amended to address the issues raised in Defendant's pre-motion letter, Plaintiff's response to Defendant's letter does not mention whether Plaintiff intends to amend the complaint. *See* [Dkt.] No. 11. The Court warns Plaintiff that it will not on its own consider whether Plaintiff should receive leave to file an amended complaint if the Court grants Defendant's motion to dismiss because although, "in general, courts should freely give leave to amend pleadings when justice so requires," "no court can be said to have erred in failing to grant a request that was not made." *Hu v. City of New York*, 927 F.3d 81, 107 (2d Cir. 2019) (affirming dismissal of complaint without leave to amend). Similarly, if Plaintiff attempts to request leave to amend in Plaintiff's opposition brief, without proposing any specific amendments, the Court will not be inclined to grant leave to amend because "denial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured." *Noto v. 22nd Century Grp.*, Inc., 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend).

---

[5] Plaintiff's June 9, 2025 motion to reconsider (Dkt. No. 17) has not been referred to the undersigned. To the extent Plaintiff's motion at Dkt. No. 17 remains pending, and to the extent the motion is referred to the undersigned, the undersigned respectfully recommends that the motion be denied. The standard for granting a motion for reconsideration is "strict" and reconsideration will "generally be denied unless the moving party can point to controlling decisions or data that the court overlooked. . . ." *Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441 (HG) (TAM), 2022 WL 3655177, at *1 (E.D.N.Y. Aug. 25, 2022) (citations omitted). Here, the undersigned respectfully recommends the Court deny Plaintiff's motion to reconsider because the Court has already reviewed and rejected Plaintiff's argument to remand to state court, and Plaintiff failed to point to any controlling decisions or data that the Court overlooked. Text Order dated May 27, 2025 ("[Plaintiff] argues that this Court lacks subject-matter jurisdiction; however, because the state court complaint invokes the federal Truth in Lending Act and Real Estate Settlement Procedures Act, see ECF No. [1-2] at 2, it provides a basis for federal-question jurisdiction under 28 U.S.C. §§ 1331, 1441(a). The motion to remand is therefore DENIED."). Additionally, as the Court later noted in its Text Order dated June 18, 2025, even if Defendant had defaulted in state court, that alone does not prevent removal. *See, e.g.*, *Shukla*, 2024 WL 248775, at *3-5.

Finally, for the avoidance of doubt, the Court briefly addresses Plaintiff's statement that this Court lacks jurisdiction. *See* [Dkt.] No. 11 at 2. For the reasons explained in the Court's May 27, 2025, Text Order, this Court has subject-matter jurisdiction. Additionally, the Court rejects Plaintiff's argument that remand is required because Defendant was in default in state court. Even if Defendant had defaulted in state court, that alone does not prevent removal. *See Shukla v. Meta Platforms Inc.*, No. 23-cv-10150, 2024 WL 248775, at *3-5 (S.D.N.Y. Jan. 8, 2024).

Text Order dated June 18, 2025. Defendant filed its motion to dismiss on July 18, 2025. *See* Dkt. No. 13. Defendant raises several arguments in its motion to dismiss. First, Defendant argues that Plaintiff's claims are barred by the doctrine of *res judicata*. Dkt. No. 13-1 at 15-18. Defendant then argues that should the Court find that Plaintiff's claims are not all subject to dismissal on *res judicata* grounds, Plaintiff's claims fail as a matter of law.[6] Defendant argues that it had standing to foreclose on the Property. *See id.* at 20-22. Defendant adds that Plaintiff lacks standing to raise RESPA and TILA claims. *See id.* at 22-24. Defendant also argues that Plaintiff's claim that Defendant violated FAPA fails as a matter of law. *See id.* at 24-25. Defendant argues that Plaintiff's fraud in the inducement and concealment claims are not pleaded with specificity and fail as a matter of law. *See id.* at 25-26. Finally, Defendant contends that Plaintiff's intentional infliction of emotional distress claim, as well as his slander of title claim, fail as a matter of law. *See id.* at 26-28.

Plaintiff opposed Defendant's motion on July 30, 2025. Dkt. No. 19. Defendant filed a letter indicating that it will not file a reply. Dkt. No. 20. Plaintiff acknowledged that the motion

---

[6] Defendant argues that "Plaintiff's claims are fully refuted by evidence documented in the Foreclosure Action, of which the Court may take judicial notice." Dkt. No. 13-1 at 18-19. As noted above, the Court can indeed take judicial notice of the documents associated with the Foreclosure Action. *See, e.g.*, *Balash*, 2023 WL 4420407, at *3 ("The Judgment of Foreclosure, the Notice of Pendency, Summons and Complaint filed with the Office of the Clerk of Columbia County, the February 16, 2016 Order of Reference, and the Notice of Sale, are publicly filed documents and thus the proper subject of judicial notice"). But "judicial notice is limited to 'the fact of such litigation and related filings' and the Court does not consider those documents 'for the truth of the matters asserted in the other litigation.'" *Id.* (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)). The Court addresses Defendant's arguments accordingly.

15

to dismiss is fully briefed. Dkt. No. 21. Nonetheless, on October 20, 2025, Plaintiff filed a "supplemental memorandum of law and judicial notice." Dkt. No. 22. In an abundance of caution, the undersigned has reviewed and considered all of the documents. Dkt Nos. 19, 21, 22.

On October 27, 2025, the Court referred the motion to dismiss to the undersigned for a report and recommendation. Order Referring Mot. dated Oct. 27, 2025. On November 18, 2025, the U.S. Court of Appeals for the Second Circuit denied Plaintiff's interlocutory appeal. Dkt. No. 23. On November 25, 2025, the undersigned directed the parties to submit supplemental briefing as to whether *Article 13 LLC v. Ponce De Leon Bank*, No. 96, 2025 WL 3272351 (N.Y. Nov. 25, 2025) applies to this action. Order dated Nov. 25, 2025. Defendant filed a letter on December 2, 2025. Dkt. No. 24. Plaintiff did not file any supplemental briefing as to FAPA by the December 9, 2025 deadline. Instead, on December 9, 2025, Plaintiff filed a motion, re-arguing that Defendant is in default. Dkt. No. 25.[7]

---

[7] Plaintiff argues that Defendant defaulted in the Foreclosure Action and in this action. *See* Dkt. No. 17 at 1-2; *see also* Dkt. No. 19 at 3 (Plaintiff argues Defendant is in default because it never answered the Complaint); Dkt. No. 22 at 1 (arguing again that Defendant default in failing to answer the Complaint); Dkt. No. 22 at 2 (arguing that Defendant is improperly refusing to litigate in state court); Dkt No. 25. Defendant is not in default because it timely moved for a pre-motion conference in anticipation of its moved to dismiss after the notice of removal. After removal, Defendant filed a premotion conference letter on May 2, 2025, which is seven days after the April 25, 2025 notice of removal. Fed. R. Civ. P. 81(b)(2)(C) ("A defendant who did not answer before removal must answer or present other defense or objections under these rules within the longest of these periods: . . . (C) 7 days after the notice of removal is filed"); Fed. R. Civ. P. 12(a)(4)(A) ("Unless the court sets a different time, serving a motion under this rule alter these periods as follows: (A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action"). As to this proceeding, however, once the action has been removed to federal court, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). Finally, as the Court held on June 18, 2025, even if Defendant had defaulted in state court, which it did not, that alone does not prevent removal. Text Order dated June 18, 2025 (citing *Shukla*, 2024 WL 248775, at *3-5, *report and recommendation adopted*, 2024 WL 247108 (S.D.N.Y. Jan. 23, 2024)); *see also Shukla*, 2024 WL 248775, at *5 ("Even if Defendants were properly served on October 26, 2023 and were in default as of the time the Removal Notice was filed on November 17, 2023, this action was still removable.")).

## II.    <u>Standard of Review</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted), and must show that the court has subject matter jurisdiction.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); Fed. R. Civ. P. 12(h)(3).

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).  Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  The Court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff but need not "credit conclusory allegations or legal conclusions couched as factual allegations."  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotations omitted); *see, e.g.*, *McCray v. Lee*, 963 F.3d 110, 116 (2d Cir. 2020) (affirming "[a] complaint filed by a plaintiff *pro se* is to be construed 'liberally to raise the strongest arguments [it] suggest[s].'" (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))); *Cooke v. Frank Brunckhorst Co., LLC*, 788 F. Supp. 3d 390, 395 (E.D.N.Y. 2025) (affirming "the Court is mindful that the plaintiff is proceeding *pro se* and that the complaint must be 'liberally construed' in favor of the plaintiff" (quoting *Coffey v. United States*, 939 F. Supp. 185, 189-90 (E.D.N.Y. 1996))); *Maynard v. Comm'r*, No. 15-CV-586 (CBA) (LB), 2015 WL 4069356, at *1 (E.D.N.Y. July 1, 2015) ("pleadings submitted *pro se* . . . are held to a less stringent standard and must be liberally construed."). "District courts must interpret a *pro se* complaint to raise the strongest claims that it suggests." *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 287 (E.D.N.Y. 2024) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Moreover, at the pleadings stage of the proceeding, "the Court must assume the truth of 'all well-pleaded, nonconclusory factual allegations in the complaint.'" *1567 56th St., LLC v. Spitzer*, 774 F. Supp. 3d 476, 488 (E.D.N.Y. 2025) (quoting *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010)).

## III.  Discussion

### A.  Plaintiff's Reliance on Seemingly Fabricated Documents

As an initial matter, the undersigned addresses Plaintiff's reliance on seemingly fabricated documents. *See* Dkt. No. 13-1 at 8, 22.

As background, in *Bey El II*, Plaintiff proceeded *in forma pauperis* ("IFP"). *See Bey El II*, 2019 WL 4805214, at *1. The SDNY court held that Plaintiff did not "assert cognizable claims

under any of the federal statutes to which he refers and therefore his claims are based on an indisputably meritless legal theory"; "[m]oreover, he appears to have fabricated documents, including a USDA document, suggesting—at the very least—that he is abusing the judicial system." *Id.* at *3 (internal citations and quotation marks omitted).  The SDNY court therefore dismissed Plaintiff's complaint as frivolous or malicious pursuant to the IFP statute at 28 U.S.C. § 1915(e)(2)(B).

Here, in contrast, Defendant removed this action to federal court and Plaintiff has not sought to proceed IFP.   But "[r]egardless of whether a plaintiff has paid the filing fee, a district court has the inherent power to dismiss a case, *sua sponte*, if it determines that the action is frivolous or the court lacks jurisdiction over the matter."  *Heriveaux v. Fed. Bureau of Investigations*, No. 21-CV-3427 (ENV) (LB), 2021 WL 3020688, at *1 (E.D.N.Y. June 30, 2021) (first citing *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000); and then citing Fed. R. Civ. P. 12(h)(3)).  As the Second Circuit has held, "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee."  *Fitzgerald*, 221 F. 3d at 364 ("Although 28 U.S.C. § 1915(d) "authorizes courts to dismiss a frivolous or malicious action, . . . there is little doubt they would have power to do so even in the absence of [the IFP] statutory provision.") (first quoting *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995); and then quoting *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 307-08 (1989)); *see also Huminski v. Connecticut*, No. 14-CV-1390 (MPS), 2015 WL 1650845, at *4 (D. Conn. Apr. 14, 2015) (quoting *Fitzgerald*, 221 F.3d at 364); *Atum v. Ricigliano*, No. 12-CV-2447 (NGG) (LB), 2012 WL 3230529, at *1 (E.D.N.Y. July 31, 2012) (quoting *Fitzgerald*, 221 F.3d at 363-64).  Indeed, "as courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order

19

to preserve scarce judicial resources." *Fitzgerald*, 221 F.3d at 364; *see also Huminski*, 2015 WL 1650845, at *4 (quoting same); *Atum*, 2012 WL 3230529, at *1 (quoting same).  As the court in *Ank Bey El II* summarized,

> A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . .; or (2) the claim is based on an indisputably meritless legal theory.") (internal quotation marks and citation omitted); *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (holding that "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible").
>
> A claim is malicious where it appears a plaintiff is "abusing the judicial system in the process" of litigating a claim. *Nelson v. Eaves*, 140 F. Supp. 2d 319, 322 (S.D.N.Y. 2001).

*Bey El II*, 2019 WL 4805214, at *3.

In both *Bey El II* and the present case, Plaintiff cites to the same "Notice of Default" and "Certification of Non-Response/Non-Performance."  *Compare* Dkt. No. 1-2 at 75, 78 *with Bey El II*, Dkt. No. 3 at 27-28.  Importantly, both actions rely on the "Notice and Acknowledgement of Final Payment," purportedly sent by USDA.  Dkt. No. 1-2 at 17, 59.

In *Bey El II*, this USDA document "inform[ed] the borrower, Christopher Celestine, that he would receive a United States treasury check in the amount of $713,000.00, dated October 25, 2018." *Bey El II*, 2019 WL 4805214, at *2; *see also Bey El II*, Dkt. No. 3 at 29.  The SDNY court noted that the USDA document "appears to have [been] fabricated." *Bey El II*, 2019 WL 4805214, at *2.

Here, Plaintiff relies on a purported USDA document dated June 8, 2008—rather than October 25, 2018, as in *Bey El II*—and the document informed Celestine that he would receive a United States treasury check in the amount of $707,400, not $713,000.  Dkt. No. 1-2 at 17, 59; *Bey*

20

*El II*, 2019 WL 4805214, at *2.  Separate from the different dates and monetary figures, there appear to be indicia of forgery.  The document is of poor quality and appears to contain a white redaction at the top left portion of the document.  Dkt. No. 1-2 at 17, 59.  The document appears to have a typographical error for the name of the borrower as "ChristopherC elestine" [*sic*].  *Id.* The document states that "this note is functus officio as of assignment date 5-8-2008," and the document cites to law without providing any context, "Gordon vs. Wansey and the Uniform Residential Mortgage Satisfaction Act of 2004, Section 203, [*sic*] secured creditor to submit satisfaction for recording liability for failure."  *Id.*  Plaintiff signed the document as "Executor, Private Banker, Receiver."  *Id.*

The reference in the purported USDA document to "Gordon vs. Wansey" appears to be a citation to *Gordon v. Wansey*, 21 Cal. 77 (1862) and is particularly perplexing.  There is no indication as to why the USDA would cite to a century-old case from the California Supreme Court regarding the Property dispute in Brooklyn.[8]  The reference to URMSA in the purported USDA document is also confounding.  URMSA "is not a federal law."  *Bey El II*, 2019 WL 4805214, at *1 n.1 (citation omitted).  Indeed, Alabama, North Carolina, Virginia, Virgin Islands, and Wisconsin are the only jurisdictions that have adopted URMSA.   Unif. Residential Mortg. Satisfaction Act editors' note (West 2025) (citing to Ala. Code §§ 35-10-90 to 35-10-98; N.C. Gen. Stat. §§ 45-36.2 to 45-242.3; Va. Code §§ 55.1-346 to 55.1-352; Wis. Stat. §§ 708.15); V.I. Code Ann. tit. 28, § 141 (2025); *see also* Residential Mortg. Satisfaction Act, Enactment Map,

---

[8] *Gordon* also does not apply because that action discusses whether a plaintiff can maintain an action on a promissory note under California law.  *See Gordon*, 21 Cal. at 79-80 (holding that plaintiff cannot maintain an action under the note because a payee's assignment of a negotiable promissory note to one of the makers before maturity "amounted to payment, and that the notes became *functus officio*"); *Oens v. HSBC Bank*, No. 12-CV-6005 (MMM), 2012 WL 12887753, at *6 n.33 (C.D. Cal. Oct. 16, 2012) (finding that *Gordon* holds "that full performance of an obligation by one of several co-obligors extinguishes the debt as to all obligors." (citing, *inter alia*, *Gordon*, 21 Cal. at 79)).

https://www.uniformlaws.org/committees/community-home?communitykey=c2e7cac3-f2fa-4f4b-8a80-293184799b7c (last visited Dec. 11, 2025).  Because the Property is located in New York, URMSA does not apply herein.  Notably, *Plaintiff* cited to URMSA in the Foreclosure Action (Foreclosure Action, Estoppel of Non Judicial Sale dated Aug. 12, 2019), and in *Bey El II* (*Bey El II*, 2019 WL 4805214, at *1).

Plaintiff's fabrication of documents already warranted a finding of frivolousness and maliciousness in SDNY.  *Bey El II*, 2019 WL 4805214, at *3.  In light of the above, and as discussed further in Part V *infra*, the undersigned respectfully recommends that Plaintiff be directed to show cause as to why the Court should not bar him from filing further actions in the EDNY concerning the Property without first obtaining permission from this Court to file such a complaint.  In the response to such an order, Plaintiff shall address, *inter alia*, why he again appears to be relying on, at minimum, a seemingly fabricated USDA document.

**B.    Plaintiff's Cannot State a Claim Under RESPA or TILA, and the Court Should Decline Supplemental Jurisdiction Over the Remaining State Law Claims**

Defendant argues that "Plaintiff is not a party to either the Note or the Mortgage and therefore lacks standing to raise RESPA or TILA claims."  Dkt. No. 13-1 at 23.[9]  Assuming the well-pleaded factual allegations set forth in the Complaint as true and drawing all reasonable

---

[9] The Court notes that it is unclear whether Defendant argues that the Court lacks Article III standing or statutory standing.  Dkt. No. 13-1 at 23.  Because Defendant argues that Plaintiff fails to state a claim under either RESPA or TILA, Defendant appears to be arguing "statutory standing," rather than constitutional standing.  *See, e.g.*, *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (setting forth the legal standard for Article III standing).  Statutory standing is "in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'"  *Lau v. Specialized Loan Serv., LLC*, No. 23-CV-1385 (JPC) (GWG), 2025 WL 647967, at *3 (S.D.N.Y. Feb. 28, 2025) (first quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) and then quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)), *report and recommendation adopted sub nom. Lau v. Fay Serv., LLC*, 2025 WL 2217280 (S.D.N.Y. Aug. 5, 2025).  Accordingly, the Court views this argument under Federal Rule of Civil Procedure 12(b)(6).  *See id.*, at *3.

inferences in favor of Plaintiff, and while also interpreting the *pro se* Complaint to raise the strongest claims it suggests, Plaintiff still fails to state RESPA and TILA claims.

### i.     Plaintiff Fails to State a Claim Under RESPA

The undersigned respectfully recommends that Plaintiff's RESPA claim be dismissed. RESPA "is a consumer protection statute that provides a mechanism for regulating the real estate settlement process and if entities or persons responsible for servicing federally regulated mortgage loans fail to comply with any provision of RESPA, they shall be liable to the borrower for each such failure." *Hunte v. Rushmore Loan Mgmt. Servs., LLC*, No. 22-CV-2169 (KMK), 2023 WL 2504734, at *5 (S.D.N.Y. Mar. 14, 2023) (quoting *Garrasi v. Selene Finance, LP*, 407 F. Supp. 3d 110, 116 (N.D.N.Y. 2019)). "Thus, a defendant's liability in a civil action under RESPA is limited to borrowers." *Id.* ("Thus, plaintiffs only have a cause of action under RESPA if they are 'borrowers' within the meaning of the statute.") (quoting *Garrasi*, 407 F. Supp. 3d at 116)); *see also Lau*, 2025 WL 647967, at *3 (first citing 12 U.S.C. § 2605(f); then citing *Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019); and then citing *Garrasi*, 407 F. Supp. 3d at 116)).

"Courts have consistently held that the term 'borrower' under RESPA is someone who is personally obligated under a federally related mortgage loan." *Lau*, 2025 WL 647967, at *3 (first citing *Garrasi*, 407 F. Supp. 3d at 118; and then citing *Keen*, 930, F.3d at 804). A person is personally obligated under a loan when they have "signed or assumed" the loan, *id.* at *4 (citing *Keen*, 930 F.3d at 802), or when they are "bound by the promissory note[,]" *id.* (citing, *inter alia*, *Garrasi*, 407 F. Supp. 3d at 117). Signing a mortgage, or owning a home subject to a mortgage does not make an individual borrower under RESPA. *Id.* (citing *Keen*, 930 F.3d at 802 ("signing a mortgage, or owning a home subject to one, does not make you a 'borrower'"); *Garrasi*, 407 F. Supp. 3d at 117 (finding that a plaintiff who was assigned the rights and interests of a mortgage-

related promissory note was not a borrower under RESPA); *Sharp v. Deutsche Bank Nat. Tr. Co.*, No. 23-CV-1385 (JPC) (GWG), 2015 WL 4771291, at *6 (D.N.H. Aug. 11, 2015) ("while [the plaintiff] points out that he was named as a borrower in the mortgage, he does not allege that he was a borrower on the loan and, indeed, the promissory note does not bear his signature," thus, plaintiff is not a "borrower" under RESPA); *Johnson v. Ocwen Loan Serv.*, 374 F. App'x. 868, 873-74 (11th Cir. 2010) (a plaintiff who acquired her mother's property was not a "borrower" under RESPA)).

Here, Plaintiff fails to state a claim under RESPA because he was never the borrower under the Mortgage. *See Ogando v. Napolitano*, No. 25-CV-2066 (OEM) (TAM), 2025 WL 2721391, at *5 (E.D.N.Y. Sept. 24, 2025) ("Plaintiff has not established that he is a borrower protected by RESPA or identified any notices that should have been provided to him or fees that should not have been charged"; "[t]herefore, RESPA does not provide a basis for federal question jurisdiction."). As set forth in the attachments to the Complaint and the documents related to the Property and the Foreclosure Action taken under judicial notice, non-party Christopher Celestine executed the Note, obtaining a loan in the amount of $707,400, Celestine executed the Mortgage and conveyed the Property to MERS, as nominee of Cambridge Home Capital, LLC, and Cambridge Home Capital, LLC secured interest in the Property by virtue of a deed recorded on June 7, 2007 in the land records for Kings County, New York. Dkt. No. 1-2 at 16; Dkt. No. 13-5. Celestine defaulted under the terms of the Note and Mortgage. Dkt. No. 13-7 at 6. The Mortgage was subsequently assigned to Defendant, as noted in the land records for Kings County, New York on October 9, 2008. Dkt. No. 13-6. Nor does Celestine's transfer of the property to "Yashua Ank Bey El Trust" confer Plaintiff a right to sue under RESPA. Dkt. No. 13-8; *see also Lau*, 2025 WL

647967, at *4 (citing *Keen*, 930 F.3d at 802 (holding that "owning a home subject to [a mortgage], does not make you a 'borrower'")).

Even the purported "Notice and Acknowledgement of Final Payment" by the USDA lists "ChristopherC elestine [*sic*]"—and not Plaintiff—as the name of borrower.  Dkt. No. 1-2 at 17, 59.  Plaintiff does, however, sign this document as "Executor, Private Banker, Receiver."  *Id.*  But even if Plaintiff's third-party status should be credited, that third-party status would be insufficient for Plaintiff to state a claim under RESPA.  *See Hunte*, 2023 WL 2504734, at *6 (holding that a third party "attempting to appear as [the borrower's] attorney" cannot sue under RESPA, but dismissing under Article III standing grounds).

Accordingly, Plaintiff fails to state a claim under RESPA.

### ii.    Plaintiff Fails to State a Claim Under TILA

The undersigned next respectfully recommends the Court dismiss Plaintiff's TILA claim. TILA was enacted to "protect consumers against inaccurate and unfair credit billing and credit card practices and promote the informed use of credit by assuring a meaningful disclosure of credit terms."  *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016) (internal quotation marks omitted) (quoting, *inter alia*, 15 U.S.C. § 1601(a)).  "The TILA promotes this goal largely by 'imposing mandatory disclosure requirements on those who extend credit to consumers in the American market.'"  *Id.* (quotation omitted).  The Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1601, 1602, 1604, 1610, 1639, 1648, amends TILA by requiring "additional disclosures for high-cost mortgage loans and restricts the terms on which such loans can be offered."  *Barker v. Rokosz*, 740 F. Supp. 3d 187, 191-92 (E.D.N.Y. 2024) (citing 15 U.S.C. § 1639).  Significantly, both "TILA and HOEPA apply only to 'consumer credit transactions.'"  *Id.* at 192 (quoting 15 U.S.C. § 1638-39).  "A consumer credit transaction is a transaction where

'the party to whom credit is offered or extended is a natural person' and 'the money, property, or services which are the subject of the transaction are primarily for personal, family or household purposes.'" *Id.* (quoting 15 U.S.C. § 1602(i)).

Here, Plaintiff's TILA claim should be dismissed because Plaintiff is not a "consumer"; that is, he is not "the party to whom credit is offered or extended" under 15 U.S.C. § 1602(i). The Note and Mortgage was extended to Celestine, not Plaintiff. Dkt. No. 1-2 at 16; Dkt. No. 13-5; *see also* Dkt. No. 13-7 at 6 (Celestine, not Plaintiff, defaulted under the terms of the Note and Mortgage). Even Plaintiff acknowledges that Celestine is the borrower in the purported "Notice and Acknowledgement of Final Payment" from the USDA. Dkt. No. 1-2 at 17, 59. Thus, Plaintiff fails to state a claim under TILA. *See Johnson v. Multi-Sols., Inc.*, 493 F. App'x 289, 291 (3d Cir. 2012) (holding that "to qualify as a 'consumer of credit,' one must, at minimum, have engaged in business with the creditor. . . . Johnson admitted that he never engaged in any direct transaction, let alone a credit transaction, with the Creditor-Defendants"); *Newson v. Mercedes-Benz Fin. Servs.*, No. 24-CV-279 (DJC) (SCR), 2024 WL 5089275, at *3 (E.D. Cal. Dec. 12, 2024) ("Plaintiff fails to allege that he is a "consumer" to whom "credit" was "offered or extended." Indeed, the allegations in the Complaint and the exhibits attached indicate that Defendant declined to offer plaintiff credit. Without an offer or extension of credit, Plaintiff is not a consumer protected under TILA."), *report and recommendation adopted*, 2025 WL 660546 (E.D. Cal. Feb. 28, 2025), *reconsideration denied*, 2025 WL 3026368 (E.D. Cal. Oct. 29, 2025); *Prophetical Word Church of Ga., Inc. v. Regions Bank*, No. 13-CV-1983 (CAP) (ECS), 2013 WL 12382316, at *3 (N.D. Ga. Oct. 9, 2013) ("Plaintiffs have not alleged that the property at issue . . . was purchased and financed through a 'consumer' transaction, which is required to state a claim under TILA and HOEPA").

Accordingly, the undersigned respectfully recommends that Plaintiff's RESPA and TILA claims be dismissed.

### iii.    The Court Should Decline to Exercise Supplemental Jurisdiction

Because the undersigned respectfully recommends that all of Plaintiff's federal claims be dismissed, the undersigned also respectfully recommends that the Court decline supplemental jurisdiction over Plaintiff's state law claims.  "[W]here a motion to dismiss eliminates a plaintiff's federal law claims before investment of significant judicial resources, the balance of factors (judicial economy, convenience, fairness, and comity) point to the court declining to exercise jurisdiction over the remaining state-law claims."  *Santos v. Lidl US, LLC*, No. 24-CV-611 (JMA) (ARL), 2025 WL 2614944, at *3 (E.D.N.Y. Sep. 10, 2025) (citing *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010)), *reconsideration denied*, No. 24-CV-00611 (JMA) (ARL), 2025 WL 2917329 (E.D.N.Y. Oct. 14, 2025).  "In the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Id.* (quoting then citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also Espinoza v. Nassau Cnty. Corr. Ctr.*, No. 20-CV-223 (GRB) (VMS), 2021 WL 826168, at *3 (E.D.N.Y. Mar. 3, 2021) ('[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." (quoting *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006)).

Accordingly, the undersigned respectfully recommends that the Court declines supplemental jurisdiction over all state law claims.  *Santos*, 2025 WL 2614944, at *4 ("Due to the failure of Plaintiff's FLSA claim and the fact that this case is at the motion to dismiss stage, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims."); *see also*

27

*Espinoza*, 2021 WL 826168, at *4 ("Having dismissed plaintiff's Section 1983 claims—the only federal cause of action—the Court finds that concerns for judicial economy, convenience, fairness and comity weigh against retaining supplemental jurisdiction over the remaining state law negligence claim.").

### C.     The Complaint is Barred by *Res Judicata*

Even if the Court exercises supplemental jurisdiction, however, the undersigned respectfully recommends that all state law claims be dismissed for the reasons explained below.

Defendant argues that all of Plaintiff's claims are "barred by *res judicata* because Plaintiff's claims either were or could have been brought during the Foreclosure Action and because Plaintiff, who acquired title to the Property during the pendency of the Foreclosure Action, is bound by the Judgment of Foreclosure and Sale entered in the Foreclosure Action." Dkt. No. 13-1 at 15. Plaintiff responds that he was not a party in the Foreclosure Action. Dkt. No. 19 at 3.

"A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *Bordonaro v. FCI Lender Servs., Inc.*, No. 22-CV-2545 (NJC) (JMW), 2025 WL 2753175, at *4 (E.D.N.Y. Sep. 28, 2025) (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014)). "In assessing the preclusive effect of a prior state-court judgment, [federal courts] apply the preclusion law of the state that issued the judgment." *Bordonaro*, 2025 WL 2753175, at *4 (quoting *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*, 110 F.4th 106, 114 (2d Cir. 2024)). "Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Haziz-Ramadhan v. Specialized Loan Serv., LLC*, No. 23-CV-2671 (OEM) (JMW), 2023

WL 8003339, at *3 (E.D.N.Y. Nov. 17, 2023) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286-87 (2d Cir. 2002)).  "In New York, *res judicata* applies where: '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been raised, in the prior action.'"  *Haziz-Ramadhan*, 2023 WL 8003339, at *3 (quoting *Harris ex rel. Harris v. BNC Mortg., Inc.*, No. 16-CV-2126 (MKB), 2017 WL 1166357, at *4 (E.D.N.Y. Mar. 28, 2017), *aff'd sub nom.*, *Harris v. BNC Mortg., Inc.*, 737 F. App'x 573 (2d Cir. 2018)); *see also Bordonaro*, 2025 WL 2753175, at *4 (citations omitted).

"New York takes a transactional approach to *res judicata*: 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'"  *McKenzie v. Wilmington Sav. Fund Soc'y, FSB as Tr. of Standwich Mortg. Loan Tr. I*, No. 24-CV-7665 (AYS), 2025 WL 2772854, at *5 (E.D.N.Y. Sep. 29, 2025) (quoting *Sosa v. J.P. Morgan Chase Bank*, 33 A.D.3d 609, 610 (2d Dep't 2006) (internal quotation marks and citation omitted)).  "The 'same transaction' or 'series of transactions' standard turns on 'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"  *Beijing Neu Cloud Oriental Sys. Tech.*, 110 F.4th at 114 (quoting *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94 (2005)).  "Even if there are variations in the facts alleged or different relief is sought, if the actions are grounded on the same gravamen of the wrong, *res judicata* applies."  *McKenzie*, 2025 WL 2772854, at *5 (quoting *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008)).

### i.     The previous action involved an adjunction on the merits

Here, all three elements of *res judicata* are met.  First, the Foreclosure Action that resulted in the Judgment of Foreclosure (Dkt. No. 13-12) was a prior adjudication on the merits in state court.  *See Manzolillo v. Nationstar Mortg., LLC*, 765 F. Supp. 3d 157, 165 (E.D.N.Y. 2025) ("[A] judgment of foreclosure entered against [a plaintiff] is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and would disturb [the defendant's] ability to enforce rights provided pursuant to the mortgage and the note securing [the property]." (quoting *Done v. Wells Fargo Bank, N.A.*, No. 08-CV-3040, 2009 WL 2959619, at *4 (E.D.N.Y. Sep. 14, 2009) (Bianco, J.))); *Borrani v. Nationstar Mortg. LLC*, No. 17-CV-9397 (KMK), 2019 WL 1429982, at *11 (S.D.N.Y. Mar. 29, 2019) (holding that a foreclosure action resulting in a final judgment of foreclosure and sale was an adjudication on the merits; *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (same).

### ii.     The previous action involved the same adverse parties or those in privity with them

Second, even though Plaintiff was not a party in the Foreclosure Action, the element requiring that the "the previous action involved [the party against whom *res judicata* is invoked] or its privy" is also met because Plaintiff was in privity with Christopher Celestine, the defendant party to the Foreclosure Action.

In the context of foreclosures, "[t]he term 'privity' has been applied to denote a mutually successive relationship of the same rights to the same property."  *Plotch v. U.S. Bank Nat'l Ass'n*, No. 24-CV-1308, 2025 WL 1949987, at *3 (2d Cir. July 16, 2025).  Plaintiff became in privity with Celestine after Celestine conveyed title to the Property to the Yashua Ank Bey El Trust, with Plaintiff as trustee, in 2010.  *See Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) (holding that, for purposes of contesting a foreclosure action, "privity extends to

parties who are successors to a property interest") (internal quotation and citation omitted). Defendant initiated the foreclosure proceedings in 2008, two years before Celestine conveyed title to Plaintiff.  *See* Dkt. No. 13-19 at 2.  Three Notices of Pendency were filed in the Supreme Court of the State of New York, Kings County, related to that action, with Celestine named as a defendant.  *See* Foreclosure Action, Notices of Pendency dated June 2, 2008, Sep. 11, 2013, and Oct. 20, 2016; Dkt. No. 13-19; Dkt. No. 13-19 at 2, 5, 8; Dkt. No. 22 at 9, 15.  "The purpose of a notice of pendency is to place any subsequent purchaser of the real property on constructive notice that the property is the subject of pending litigation."  *See Richard J. Zitz, Inc. v. Pereira*, 965 F. Supp. 350, 354 (E.D.N.Y. 1997).

Since Celestine conveyed title to the disputed property to Plaintiff in 2010, the 2008 Notice of Pendency placed Plaintiff on constructive notice of the Foreclosure Action when he purchased the property.  *See Plotch*, 2025 WL 1949987, at *3 n.7 ("A person whose conveyance or incumbrance is recorded after the filing of [a notice of pendency] is bound by all proceedings taken in the action after such filing to the same extent as a party.") (alteration in original) (quoting N.Y. C.P.L.R. § 6513); *Commonwealth Ins. Co. v. 2610 Cropsey Devel. Corp.*, No. 22-CV-2512 (BMC) (PK), 2025 WL 3004780, at *5 n.2 (E.D.N.Y. Oct. 27, 2025) ("New York law provides a 'notice of pendency' procedure . . . by which a party may record and thereby give constructive notice of an outstanding legal action whose resolution may affect title to real property.") (citing N.Y. C.P.L.R. §§ 6501(a), 6511).

Indeed, Plaintiff was afforded notice and opportunity to contest the foreclosure because Plaintiff is in privity with Celestine (the party defendant in the Foreclosure Action) and Celestine filed objections in the same action.  *See* Foreclosure Action, Decision/Order dated Dec. 3, 2013 (rejecting Celestine's "redemption theory" as meritless and holding that "there was no discharge

31

of the mortgage"); *see also Buechel v. Bain*, 97 N.Y.2d 295, 306 ("Because defendants were in privity with Rhodes, the critical question is whether Rhodes had a full and fair opportunity to litigate the issue . . . . We conclude that he did."). And Plaintiff himself was afforded notice and opportunity to litigate in the Foreclosure Action because he filed numerous motions in that action. *See, e.g.*, Foreclosure Action, "Third Party Summons" and "Verified Counter Complaint" dated Aug. 19, 2014; Notice Pursuant to Rule Nisi Motion to Compel Motion for Summary Judgment dated Sep. 7, 2016; Aff. for Void J. and to Set Aside Order dated July 20, 2018; Estoppel of Non Judicial Sale dated Aug. 12, 2019; Proposed Order to Show Cause dated Sep. 17, 2019. The Supreme Court of New York State, Kings County rejected every argument. *See, e.g.*, Foreclosure Action, Decision and Order dated Mar. 25, 2015 (holding that Plaintiff's "Verified Counter Complaint" fails to assert "any specific allegations supporting a fraud claim, and failed to meet the particularity requirement of N.Y. C.P.L.R. § 3016); Order dated May 7, 2018 (finding that Plaintiff is a "non-party and has not sought to intervene in this action," and, accordingly, "does not have standing to bring the instant motion"); Order dated Dec. 6, 2018 (reiterating that Plaintiff was a "non-party and had not sought intervention" and "lacked standing to bring the previous motion"); Declined Order to Show Cause dated Sep. 20, 2019 ("Decline to Sign"); *see also Singh v. Parnes*, 199 F. Supp. 2d 152, 159 (S.D.N.Y. 2002) ("Even if Singh personally was not a party to all of the earlier state proceedings, the *Singh III* court held that he was in privity with plaintiffs in the prior action and thus barred by *res judicata* from relitigating. . . . [T]he Court finds that those considerations are satisfied here.").

In any event, the Supreme Court of New York State, Kings County, held in the Foreclosure Action that Plaintiff is a "non-party and has not sought to intervene in this action." Foreclosure Action, Order dated May 7, 2018 (citing *Fotiades*, 800 N.Y.S.2d 748); *see also* Foreclosure

32

Action, Order dated Dec. 6, 2018. Plaintiff failed to file a motion for leave to intervene before the New York State Supreme Court, Kings County. *See In re Fotiades*, 21 A.D. at 898 ("by failing to move for leave to intervene prior to the hearing on the petition, though the record shows that he had notice of the proceeding at least three months earlier, the appellant effectively waived any right he may have had to participate in the litigation") (citing *NYCTL 1996-1 Trust v. King*, 304 A.D.2d 629, 631 (2d Dep't 2003); and citing *Vacco v. Herrera*, 247 A.D.2d 608 (2d Dep't 1998))

Therefore, Plaintiff, as a successor in interest who failed to intervene after being given constructive notice, is deemed to have had full and fair opportunity to contest the foreclosure. *Plotch*, 2025 WL 1949987, at *3 n.7[10]; *see also, e.g.*, *Burton v. Wells Fargo Bank, N.A.*, 738 F. Supp. 3d 272, 290-91 (E.D.N.Y. 2024) (holding that a former property owner's claims challenging a bank's standing to obtain a foreclosure judgment were barred by *res judicata* because the foreclosure judgment constituted a prior adjudication on the merits); *Estate of Keys v. Union Planters Bank, N.A.*, 578 F. Supp. 2d 629, 635-36 (S.D.N.Y. 2008) (holding that *res judicata* barred a subsequent federal fraud claim because the former property owner could have raised the fraud claim during the state court foreclosure proceedings).

### iii. The claims asserted in the subsequent action were, or could have been raised, in the prior action

Turning to the final element needed to prevail on a *res judicata* defense, Plaintiff's claims could have been raised by Celestine or Plaintiff as affirmative defenses in the Foreclosure Action

---

[10] In *Plotch*, the Second Circuit determined that the plaintiff was not in privity with the party to the prior foreclosure action and thus did not have a fair opportunity to litigate his claims. 2025 WL 1949987 at *3-4. The Second Circuit noted that New York's laws regarding notices of pendency did not apply "because it [was] undisputed that there was no operative notice of pendency in place when [the plaintiff] acquired the Property at auction in 2016." *Id.* at *3 n.7. Here, in contrast to *Plotch*, an operative Notice of Pendency was in place when Plaintiff purchased the property in 2010, thus placing Plaintiff in privity with Celestine and precluding Plaintiff's claims here.

but were not. *Manzolillo*, 765 F. Supp. 3d at 164-65 ("The doctrine of *res judicata* 'also applies to defenses that could have been litigated, including defenses to a foreclosure.'" (quoting *Yeiser*, 535 F. Supp. 2d at 421)). But Celestine did not raise any affirmative defenses in the Foreclosure Action. Dkt. No. 13-12 at 2. Plaintiff also failed to intervene in the Foreclosure Action, despite having constructive notice of the pending action. *See Countrywide Bank, FSB v. Snipes*, 203 N.Y.S.3d 665, 666-67 (2d Dep't 2024) (holding that a non-party purchaser of contested property was entitled to intervene in mortgagee's foreclosure action against defaulting mortgager, despite the non-party purchaser obtaining interest in the property after the foreclosure action was commenced and a notice of pendency being filed prior to the non-party's purchase of the property). In any event, Plaintiff *did* bring actions involving similar allegations in the state court quiet title actions brought in 2023 and 2025, which were both dismissed. Dkt. No. 13-20 at 3-5; Dkt. No. 13-22 at 11.

Nonetheless, the Judgment of Foreclosure extinguished all rights, claims, and interests in the property that could have been asserted by Celestine or any subsequent titleholder, including Plaintiff, because "[t]he same transaction at issue in the Foreclosure Action is also at issue in this action": "[a]ll of Plaintiff's allegations stem from the promissory note between Plaintiff and [Defendant] executed in [2007] and the subsequent foreclosure on that note." *Massie v. Wells Fargo Bank, N.A.*, 734 F. Supp. 3d 196, 201 (D. Conn. 2024) (barring plaintiff from raising claims that arose out of the same mortgage transaction as the prior foreclosure action and that could have been raised in that prior action); *Done*, 2009 WL 2959619, at *4 (dismissing plaintiff's challenge to foreclosure where plaintiff alleged that the mortgagee lacked standing to foreclose because the mortgagee did not own the mortgage note at the time of foreclosure). To allow Plaintiff to contest the foreclosure now would undermine the finality of the Judgment of Foreclosure. *Manzolillo*,

34

765 F. Supp. 3d at 164-65 (holding that plaintiff's claims contesting a foreclosure were barred by *res judicata* because to allow them to proceed would be allowing the plaintiff to relitigate the same claims he raised in the state court foreclosure action).

Accordingly, the undersigned respectfully recommends that Plaintiff's claims be dismissed on *res judicata* grounds.

### D.    Even if *Res Judicata* did not Bar Plaintiff's State Law Claims, Plaintiff's Remaining State Law Claims are Subject to Dismissal

And even if the Court exercises supplemental jurisdiction over Plaintiff's remaining state law claims, and even if *res judicata* did not bar Plaintiff's state law claims, such claims still would be subject to dismissal for the reasons set forth below.

### i.    Defendant Had Standing to Foreclose

Plaintiff alleges that Defendant lacked standing to foreclose.  *See generally* Dkt. No. 1-2. Defendant argues, "[d]ocumentary evidence conclusively establishes that CitiMortgage was the holder of the Note and Mortgage at the commencement of the Foreclosure Action," citing to cases "where a plaintiff includes a copy of the note as part of the complaint and alleges its status as holder in the complaint."  Dkt. No. 13-1 at 14 (citing *Deutsche Bank Nat. Tr. Co. v. Logan*, 146 A.D.3d 861 (N.Y. App. Div. 2017); *JP Morgan Chase Bank, Nat. Ass'n v. Venture*, 148 A.D.3d 1269 (N.Y. App. Div. 2017); *Deutsche Bank Nat'l Tr. Co. v. Umeh*, 145 A.D.3d 497 (N.Y. App. Div. 2016)).

 "Under New York Law, 'a plaintiff has standing in a mortgage foreclosure action when it is the holder or assignee of the underlying note.'"  *Courchevel 1850 LLC v. Alam*, 464 F. Supp. 3d 475, 480 (E.D.N.Y. 2020) (citing *Deutsche Bank Nat'l Tr. Co. v. Benson*, 179 A.D.3d 767, 768 (2d Dep't 2020)), *aff'd sub nom.*, *Courchevel 1850 LLC v. Koznitz I LLC.*, No. 23-7263-CV, 2025 WL 1512953 (2d Cir. May 28, 2025)); *Windward Bora, LLC v. Weiss*, 717 F. Supp. 3d 247, 262

35

(E.D.N.Y. 2024) ("To establish standing under New York law, . . . a plaintiff must demonstrate that it is 'both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced'" (citations omitted)).  "A holder under the New York UCC is simply 'the person in possession of a negotiable instrument that is payable either by indorsement to bearer or indorsement to an identified person that is the person in possession.'"  *Courchevel 1850 LLC*, 464 F. Supp. 3d at 480-81 (quoting N.Y. U.C.C. § 1-201(b)(21)).

A party can establish "*prima facie*[] that it had standing by demonstrating that it had physical possession of the note prior to the commencement of the action, as evidenced by its attachment of the note to the summons and complaint at the time the action was commenced." *Leger v. Navila Asset Mgmt. Inc.*, No. 20-CV-3820 (EK) (RML), 2023 WL 2352843, at *7 (E.D.N.Y. Feb. 6, 2023) (quoting *CIT Bank, N.A. v. Moroz*, No. 16-CV-4473 (JMA) (SIL), 2019 WL 6352467, at *3 (E.D.N.Y. Nov. 27, 2019)), *report and recommendation adopted*, 2023 WL 2349581 (E.D.N.Y. Mar. 3, 2023).  "Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *M&T Bank v. Barter*, 129 N.Y.S.3d 459, 700 (N.Y. App. Div. 2020); *see also JP Morgan Chase Bank, Nat'l Ass'n v. Weinberger*, 37 N.Y.S.3d 286, 288 (N.Y. App. Div. 2016) (same).

Where a party in a foreclosure action fails to establish that a promissory note is attached to the complaint, it generally demonstrates a lack of standing to bring a foreclosure action.  *See, e.g., Bank of N.Y. Mellon v. Porfert*, 134 N.Y.S.3d 57, 61 (N.Y. App. Div. 2020) (finding that the plaintiff failed to meet its *prima facie* burden for standing to bring a foreclosure action where "the plaintiff asserted that the note was attached to the complaint," but "the plaintiff failed to establish

that a copy of the note was attached to the complaint. The only copy of the complaint in the record before us was submitted as an exhibit to the plaintiff's motion, and it does not include a copy of the note"); *Nationstar Mortg., LLC v. Koznitz I, LLC*, 173 N.Y.S.3d 562, 565 (N.Y. App. Div. 2022) ("Here, the plaintiff contends that it established standing by annexing a copy of the original note, endorsed to it, to the complaint. However, there is no copy of an endorsed note attached to the complaint. Rather, the copy of the note attached to the complaint states that it is an electronic document with an electronic transfer history, a fact wholly unaddressed by the plaintiff"). However, a party in a foreclosure action can demonstrate standing by submitting an affidavit of a banking officer of the plaintiff that demonstrates that plaintiff had standing to prosecute the action. *Barter*, 129 N.Y.S.3d at 462 ("Here, the plaintiff demonstrated, *prima facie*, its standing as the holder of the note by submitting the affidavit of . . . a Banking Officer of the plaintiff. The affidavit established, *prima facie*, that the plaintiff had standing to prosecute this action by virtue of its possession of the note at the time of commencement of the action").

Here, although Defendant implies that it included a copy of the Note and attached it to the Summons and Complaint when it commenced the Foreclosure Action in state court (Dkt. No. 13-1 at 14), the Summons and Complaint in the Foreclosure Action do not appear to include a copy of the Note. *See* Dkt. No. 1-2 at 65-74; Dkt. No. 13-7; Foreclosure Action, Summons and Complaint dated May 30, 2008. Nor did Defendant submit an affidavit by a banking officer or similar witness to demonstrate standing. *See Barter*, 129 N.Y.S.3d at 462.

Nonetheless, Defendant submitted a copy of the Note endorsed to Defendant as part of this motion. Dkt. No. 13-4 at 3. Defendant also provides further evidence in support of its status as a noteholder. MERS transferred the Mortgage, as nominee for Cambridge Home Capital, LLC, to Defendant via recorded assignment. Dkt. No. 13-6 at 2-3. Plaintiff does not question that

37

Defendant had physical possession of the Note prior to the commencement of the Foreclosure Action. Dkt. No. 1-2 at 4 ("1. On or about April 7, 2007, Defendant recorded a mortgage on the Property (the 'Mortgage'). 2. The Mortgage secured a promissory note that entered default in or before 2008, triggering the right to foreclose. 3. The foreclosure action was commenced and was not completed within six years of default or acceleration. 4. Defendant failed to timely prosecute foreclosure, and the statute of limitations expired in 2014."); Dkt. No. 1-2 at 14 ("For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) the following described property"). The written assignment of the Note to Defendant demonstrates that the Mortgage passed with the debt as "an inseparable incident." *Barter*, 129 N.Y.S.3d at 700; *see also Weinberger*, 37 N.Y.S.3d at 288.

Moreover, for the reasons explained above, the Judgment of Foreclosure extinguished all rights, claims, and interests in the Property that could have been asserted by Celestine or any subsequent titleholder, including Plaintiff. Plaintiff merely argues that MERS did not have the authority to foreclose on the Property and by providing documentation that asserts the mortgage debt was paid in full. *See* Dkt. No. 1-2 at 8 ("MERS lacking standing under its charter, cannot hold or transfer interests"). MERS, however, did not bring the Foreclosure Action; Defendant brought the Foreclosure Action and "appoint[ed] MERS to act as their common agent on all mortgages they register in the MERS system." *Barnett*, 60 F. Supp. 3d at 388; *see also* Dkt. No. 13-4 at 3 (the Note was endorsed to Defendant); Dkt. No. 13-6 at 2-3 (MERS transferring the Mortgage, as nominee for Cambridge Home Capital, LLC, to Defendant via recorded assignment). Moreover, as established above, Plaintiff's documents that purportedly showed that the mortgage was paid in full appears to be fabricated.

38

Therefore, the undersigned respectfully recommends Plaintiff's claim that Defendant lacked standing to foreclose on the property be dismissed.

### ii.    Plaintiff's Claims regarding FAPA

Plaintiff alleges that the Judgment of Foreclosure obtained in 2018 is time-barred and void under FAPA.  *See* Dkt. No. 1-2 at 9; Dkt. No. 19 at 3; Dkt. No. 22 at 2.  Defendant argues that Plaintiff's FAPA claim is without merit and the Complaint should be dismissed in the entirety. *See* Dkt. No. 13-1 at 17; Dkt. No. 24.

"Under New York law, the statute of limitations to commence a foreclosure action is six years from the date of acceleration of the mortgage debt."  *Article 13, LLC v. Ponce De Leon Fed. Bank*, 686 F. Supp. 3d 212, 215 (E.D.N.Y. 2023) (Gonzalez, J.); *see, e.g.*, *53rd St., LLC,* 8 F.4th at 78 ("[T]he law is well settled that . . . once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt." (quoting *Ditmid Holdings, LLC v. JPMorgan Chase Bank, N.A.*, 180 A.D.3d 1002, 1003 (N.Y. App. Div. 2020))); *1042 II Realty, Inc. v. PHH Mortg. Corp.*, 582 F. Supp. 3d 142, 146 (S.D.N.Y. 2022) ("[A] cause of action to recover the entire balance of the debt accrues at the time the loan is accelerated, triggering the six-year statute of limitations *to commence a foreclosure action*." (alteration in original) (emphasis added) (quoting *Freedom Mortg. Corp. v. Engel*, 37 N.Y.3d 1, 21 (2021))).

Importantly, FAPA § 10 provides that FAPA's limitations, including the six-year statute of limitations, "shall apply to all actions commenced on [a mortgage] in which a final judgment of foreclosure and sale *has not been enforced*."  *E. Fork Funding LLC v. U.S. Bank, Nat'l Assoc. ex. rel. Greenpoint Mortg. Funding Tr. Mortg. Pass-Through Certificates, Series 2006-AR6*, 118 F.4th 488, 493 (2d Cir. 2024) (quoting FAPA § 10).  Section 10 necessarily supports legislative intent in enacting FAPA: to prevent lenders from indefinitely delaying foreclosure actions through

procedural tactics, such as voluntary discontinuance—not for FAPA to be used as a vehicle to contest foreclosure actions where a final judgment of foreclosure and sale has been enforced. *See Article 13 LLC v. Ponce De Leon Fed. Bank*, 2025 WL 3272351, at *2-4 (N.Y. Nov. 25, 2025); *E. Fork Funding LLC*, 118 F.4th at 493 ("Section 8 [of FAPA] provides that 'the voluntary discontinuance of [an action on a mortgage] . . . shall not . . . reset the limitations period to commence an action." (second, third, and fourth alterations in original) (quoting N.Y. C.P.L.R. § 3217(e))).

Since a final judgment on the merits was reached in the underlying Foreclosure Action—the Judgment of Foreclosure—FAPA does not apply to the instant case. Even if FAPA did apply, Defendant complied with FAPA's six-year statute of limitations. As Defendant correctly points out, "Celestine defaulted under the Loan instruments on December 1, 2007." Dkt. No. 13-1 at 25. The following year, on May 30, 2008, Defendant timely commenced the Foreclosure Action, well within FAPA's six-year statute of limitations. Dkt. No. 13-7 at 5-8. While the Judgment of Foreclosure was not filed until 2018, Defendant commenced the Foreclosure Action within the applicable statute of limitations. Additionally, the Judgment of Foreclosure does not evidence any intent by Defendant to indefinitely delay the Foreclosure Action. *See generally* Dkt. No. 13-12 at 2-10.

Thus, because a final judgment was reached in the Foreclosure Action, and because Defendant commenced the foreclosure action within the six-year statute of limitations, Plaintiff has failed to state a claim under FAPA. *See Article 13*, 686 F. Supp. 3d at 215; *E. Fork Funding*, 118 F.4th at 493.

The New York Court of Appeal's recent holding in *Article 13 LLC v. Ponce De Leon Fed. Bank*, 2025 WL 3272351 (N.Y. Nov. 25, 2025), does not alter the result.[11]  In that action, the New York Court of Appeals held that FAPA "shall take effect immediately and shall apply to all [foreclosure] actions in which a final judgment of foreclosure and sale has not been enforced," and FAPA's retroactive application does not violate substantive and procedural due process under Article I, Section 6 of the New York Constitution.  *Id.* at *1.  Here, the Judgment of Foreclosure and Sale was entered on July 18, 2018 (Dkt. No. 13-12 at 1, 10), and the Referee filed his notice of sale that concluded the Foreclosure Action on June 8, 2023 (Dkt. No. 13-17).  Plaintiff's Complaint, dated April 11, 2025 (Dkt. No. 1-2 at 9), was filed after the final judgment and foreclosure and sale has been enforced, and therefore, FAPA does not apply.

### iii.    Plaintiff's Fraud in the Inducement and Fraudulent Concealment Claims

Defendant argues that Plaintiff's claims of fraud in the inducement and concealment fail as a matter of law, since Plaintiff fails to plead these claims with any particularity pursuant to Fed. R. Civ. P. 9.  *See* Dkt. No. 13-1 at 17-18.

"Under New York law, a claim for fraud in the inducement requires: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 252 F. Supp. 3d 332, 339 (S.D.N.Y. 2017) (citation omitted).  "Under New York law, a claim for fraudulent concealment requires a plaintiff to establish (1) that the defendant had a duty to disclose

---

[11] Per the Court's November 25, 2025 order, Defendant addressed this decision in its December 2, 2025 submission.  *See* Dkt. No. 24.  Plaintiff did not respond to the Court's order to address this issue by the Court-ordered deadline.  *See* Dkt. No. 25 (Plaintiff re-arguing that Defendant is in default rather than addressing FAPA).

certain material information but failed to do so; (2) that the defendant then made a material misrepresentation of fact; (3) that said misrepresentation was made intentionally in order to defraud or mislead; (4) that the plaintiff reasonably relied on the misrepresentation; and (5) that the plaintiff suffered damage as a result." *O'Neill v. NYU Langone Hosps.*, No. 23-CV-4679 (RPK) (RML), 2025 WL 3165723, at *4 (E.D.N.Y. June 9, 2025) (internal citations omitted), *report and recommendation adopted*, 2025 WL 3002035 (E.D.N.Y. Oct. 27, 2025).

Allegations of fraud are subjected to the heightened pleading standards of Fed. R. Civ. P. 9(b), which require a party to "state with particularity the circumstances constituting fraud or mistake." "Conclusory allegations of fraud" do not meet Rule 9(b)'s heightened pleading standard and are therefore subject to dismissal at the motion to dismiss stage. *See Nasso v. Bio Reference Labs., Inc.*, 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012) (Bianco, J.) (citing *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971)); *see also Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*, No. 24-CV-9305 (VM), 2025 WL 1827274, at *7 (S.D.N.Y. July 2, 2025) (noting that fraudulent concealment claims are subject to the heightened pleading standard of Rule 9(b)); *Alpha Capital Anstalt*, 252 F. Supp. 3d at 341 (holding that fraud in the inducement claims are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard).

To comply with the requirements of Rule 9(b) of the Federal Rules of Civil Procedure, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see also Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) ("Although [m]alice, intent, knowledge and other conditions of mind of a person may be averred generally, a

42

plaintiff 'must allege facts that give rise to a strong inference of fraudulent intent,' which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.") (internal citations omitted).

Here, Plaintiff fails to establish that Defendant made any material misrepresentation of fact. Plaintiff does not identify any activity by Defendant that rises to the level of fraud, nor does he identify particular misstatements of fact made by Defendant. Instead, Plaintiff merely accuses Defendant of concealing securitization and misrepresenting its status as the original promissory note holder. Dkt. No. 1-2 at 8-9; *see also* Foreclosure Action, Decision dated Mar. 25, 2015 (holding that Plaintiff's "Verified Counter Complaint" fails to assert "any specific allegations supporting a fraud claim, and failed to meet the particularity requirement of N.Y. C.P.L.R. § 3016"). Plaintiff, however, does not point to any facts "suggesting conscious misbehavior or recklessness at the time that Defendants made the alleged misrepresentations." *Prysm Grp., LLC*, 2025 WL 1827274, at *9. At bottom, Plaintiff's conclusory allegations are insufficient to state a claim for fraud. *See, e.g.*, *Williams v. Ocwen Loan Serv., LLC*, No. 19-CV-2187 (KAM) (LB), 2020 WL 5757640, at *6 (E.D.N.Y. Sep. 27, 2020) (dismissing fraud claim because "[p]laintiffs' complaint does nothing more than state bare legal conclusions in connection with the forgery claim"); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 119 (E.D.N.Y. 2015) ("Plaintiffs . . . merely assert in a conclusory fashion that the copies of the documents sought to be recorded . . . were forgeries. Thus . . . Plaintiffs fail to state a [claim] for forgery, and [the court] grants Defendant's motion to dismiss.").

Accordingly, the undersigned respectfully recommends that Plaintiff's fraud claims be dismissed for failure to state a claim and for failure to plead fraud with particularity.

43

### iv.  Plaintiff's Intentional Infliction of Emotional Distress Claim

"Under New York law, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Barnett*, 60 F. Supp. 3d 391 (citation and quotation marks omitted). "In New York, a cause of action for intentional infliction of emotional distress accrues on the date of injury and carries a one[-]year statute of limitations." *Id.* at 392 (citations and quotation marks omitted). To plead intentional infliction of emotional distress, "the plaintiff must allege conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Snitman v. BMW Fin. Servs.*, No. 25-CV-4473 (HG) (JAM), 2025 WL 3032399, at *7 (E.D.N.Y. Oct. 30, 2025), *report and recommendation adopted by* Text Order dated Nov. 19, 2025). "Whether the conduct is 'outrageous' is a matter of law to be decided by the court." *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 586 (E.D.N.Y. 2011) (citation omitted).

Here, Plaintiff has failed to sufficiently plead any of the four elements required to raise an intentional infliction of emotional distress claim. Significantly, Plaintiff fails to allege any conduct that meets New York's "rigorous[] and difficult to satisfy" standard for "extreme and outrageous conduct." *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993)). Plaintiff's conclusory allegations are insufficient to state a claim for emotional distress. *See, e.g., Barnett,* 60 F. Supp. 3d at 391-92 (dismissing emotional distress claim because the "[p]laintiffs have failed to plausibly allege the type of 'extreme and egregious conduct' that can give rise to a common law claim for intentional infliction of emotional distress").

44

Moreover, Plaintiff's intentional infliction of emotional distress claim is time-barred. Under New York law, the statute of limitations on an intentional infliction of emotional distress claim is one year. *See Guerrero v. Albany Med Health Sys.*, No. 24-CV-01344 (MAD) (DJS), 2025 WL 2645540, at *3 (N.D.N.Y. Sep. 15, 2025) ("In other words, for an [intentional infliction of emotional distress] claim to be timely, a plaintiff generally must sue within one year of the challenged conduct.") (citations omitted).  Here, the underlying basis for Plaintiff's entire lawsuit—the Judgment of Foreclosure—was issued in 2018. *See* Dkt. No. 13-12.  Even assuming the most generous date in Plaintiff's favor, the Referee filed his notice of sale on June 8, 2023, and Plaintiff's Complaint dated April 11, 2025 is filed after June 8, 2024.  Dkt. No. 13-17.  Despite Plaintiff bringing other federal and state lawsuits since that time, Plaintiff did not raise his intentional infliction of emotional distress claim in this action until the filing of this action in 2025. Therefore, Plaintiff's intentional infliction of emotional distress claim is untimely.

Accordingly, the undersigned respectfully recommends that Plaintiff's emotional distress claims be dismissed for failure to state a claim and because they are time-barred.

### v.    Plaintiff's Slander of Title Claim

To state a claim for slander of title under New York law, a plaintiff must plead: "(1) a communication falsely casting doubt on the validity of complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages." *Bocci v. Nationstar Mortg. LLC*, No. 23-CV-1780 (JPC) (KHP), 2025 WL 2754479, at *14 (S.D.N.Y. Sep. 29, 2025) (citation omitted); *see also Norman v. Bank of New York Mellon Tr. Co. N.A. as Tr. for Mortg. Assets Mgmt. Series 1 Tr.*, No. 24-CV-4737 (JGK), 2024 WL 4558471, at *5 (S.D.N.Y. Oct. 21, 2024) ("To plead slander of title, a plaintiff must allege: '(1) a communication falsely casting doubt on the validity of the complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in

45

special damages.'") (quoting *39 College Point Corp. v. Transpac Cap. Corp.*, 810 N.Y.S.2d 520, 521 (2d Dep't 1988)). "New York courts routinely reject . . . claims for slander of title . . . on the ground that a *lis pendens*,[12] which merely provides notice to the world that a particular property is the subject of ongoing litigation, is 'an undeniably true statement,' at least in the absence of allegations that in fact such litigation was not pending at the time the *lis pendens* was published." *Bocci*, 2025 WL 2754479, at *14.

Here, the Notices of Pendency cannot be deemed as fraudulent "because [they] accurately provided notice" of the pending action. *See Unit 3B 11 Beach LLC v. Kim*, No. 21-CV-3068 (LGS), 2022 WL 541115, at *4 (S.D.N.Y. Feb. 23, 2022) (citations omitted) (noting that "[t]he filing of a notice of pendency does not give rise to a cause of action for slander of title because a notice of pendency is an undeniably true statement."). The Complaint does not contain any well-pleaded factual allegations of any communication falsely casting doubt on the validity of the purported title.

But even if Plaintiff "could plead that the *lis pendens* was somehow false," the one-year statute of limitations applicable to slander of title claims under New York law would render untimely any claim based on the filing of the Notices of Pendency, all of which occurred years before the 2025 filing in this matter. *See Bocci*, 2024 WL 4326932, at *14. "[S]lander of title claims are subject to a one-year statute of limitations, which begins to run on the date the allegedly slanderous statements are uttered." *Reach Music Pub., Inc. v. Warner/Chappell Music, Inc.*, No. 09-CV-5580 (LTS) (GWG), 2011 WL 3962515, at *6 (S.D.N.Y. Sep. 7, 2011).

Accordingly, the undersigned respectfully recommends that Plaintiff's slander of title claims be dismissed for failure to state a claim and because they are time-barred.

---

[12] A Notice of Pendency is "traditionally referred to as a *lis pendens*." *Bocci*, 2025 WL 2754479, at *3.

## IV.    <u>Leave to Amend</u>

Defendant seeks dismissal, with prejudice, for all of Plaintiff's claims.  *See* Dkt. No. 13-1 at 8.  Moreover, the Court has already put Plaintiff on notice that the Court "will not on its own consider whether Plaintiff should receive leave to file an amended complaint if the Court grants Defendant's motion to dismiss because although, 'in general, courts should freely give leave to amend pleadings when justice so requires,' 'no court can be said to have erred in failing to grant a request that was not made.'"  Text Order dated June 18, 2025 (citing *Hu*, 927 F.3d at 107).  Further, the Court has noted that "if Plaintiff attempts to request leave to amend in Plaintiff's opposition brief, without proposing any specific amendments, the Court will not be inclined to grant leave to amend because 'denial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured.'"  Text Order dated June 18, 2025 (quoting *Noto*, 35 F.4th at 107 (affirming denial of leave to amend).  Nonetheless, Plaintiff does not seek leave to amend or provide any indication of how the Complaint's defects would be cured.  *See generally* Dkt. Nos. 17, 19, 21, 22, 25.

Plaintiff's failure to seek leave to amend or propose any specific amendments alone is sufficient to deny Plaintiff leave to amend for this motion.  *See Allison v. Clos-ette Too, LLC*, No. 14-CV-1618 (LAK) (JCF), 2014 WL 4996358, at *2 (S.D.N.Y. Sep. 15, 2014) ("While failure to include the proposed amendment is not necessarily fatal to the motion, the court may deny leave when it is unclear what changes are proposed."), *report and recommendation adopted*, 2014 WL 5002099 (S.D.N.Y. Oct. 7, 2014).  Indeed, Plaintiff offers "no explanation of how he intends to amend his pleadings to provide additional facts not already set forth" in his Complaint.  *Eisenberg v. New York City Dep't of Educ.*, No. 24-CV-1661 (HG), 2025 WL 2022093, at *16 (E.D.N.Y. July 18, 2025) (citing *Gregory v. ProNAi Therapeutics Inc.*, 757 F. App'x 35, 39 (2d Cir. 2018)

47

(affirming denial of leave to amend where "plaintiffs sought leave to amend in a footnote at the end of their opposition to defendants' motion to dismiss" and "included no proposed amendments")).

In any event, leave to amend should otherwise be denied. "[I]n general, courts should freely give leave to amend pleadings when justice so requires," as "no court can be said to have erred in failing to grant a request that was not made." *Hu*, 927 F.3d at 107 (affirming dismissal of complaint without leave to amend). "[L]eave to amend a complaint may be denied if the proposed amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006).

"In this circuit, 'a *pro se* complaint generally should not be dismissed without granting the plaintiff leave to amend at least once.'" *Wynder v. Goltzer*, No. 24-CV-7925 (GHW), 2025 WL 2207248, at *7 (S.D.N.Y. Aug. 3, 2025) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013)). "However, 'it is proper to deny leave to replead where there is no merit in the proposed amendments or amendment would be futile.'" *Wynder*, 2025 WL 2207248, at *7 (quoting *Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)); *see also Adeleke v. Suffolk Cnty. Police Dep't*, No. 21-CV-3681 (GRB) (LGD), 2023 WL 11844273, at *3 (E.D.N.Y. Feb. 8, 2023) ("[T]he duty to liberally construe *pro se* filings 'is not the equivalent of a duty to re-write [them].'" (quoting *Williams v. Richardson*, 425 F. Supp. 3d 190, 201 (S.D.N.Y. 2019))). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Berlin v. Jetblue Airways Corp.*, 436 F. Supp. 3d 550, 560 (E.D.N.Y. 2020) (quoting *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224-25 (2d Cir. 2017) (citation omitted)).

Any amendment to Plaintiff's claims would be futile because Plaintiff's federal claims are frivolous, and his state law claims are barred for the reasons set forth above. *See Hylton v. J.P.*

*Morgan Chase Bank*, 338 F. Supp. 3d 263, 284 (S.D.N.Y. 2018) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend" (citation omitted)); *see also Shipman v. Charles Schwab & Co., Inc.*, No. 14-CV-4568 (ENV) (LB), 2016 WL 11472831, at *7 (E.D.N.Y. Aug 11, 2016) ("the court need not grant leave to amend 'where the substance of the claim pleaded is frivolous on its face'" (quoting *O'Neil v. Ponzi*, 394, F. App'x 795, 796-97 (2d Cir. 2010)). Accordingly, the undersigned respectfully recommends that Plaintiff be denied leave to file an amended complaint.

## V.    **Barring Future Filings**

Defendant argues that Plaintiff is "a vexatious litigant" who should be barred "from further filings without leave of court due to Plaintiff's history of filing substantially similar and meritless suits regarding the Property." Dkt. No. 13-1 at 21. Plaintiff responds that he is not a vexatious litigant because his prior cases were dismissed without prejudice or for procedural reasons; this action involves new grounds, Plaintiff's filings are "substantive"; and vexatious litigation requires a "pattern of frivolous or malicious conduct." Dkt. No. 4.

As discussed above, Plaintiff has already been barred in SDNY because he filed a frivolous and malicious action based on his submission of fabricated documents. *Bey El II*, 2019 WL 4805214, at *3; *Bey El II*, Dkt. No. 8. But "[t]he unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Endeley v. New York Univ.*, No. 25-CV-4889 (LTS), 2025 WL 2452359, at *3 (S.D.N.Y. Aug. 26, 2025) (quoting *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998) (*per curiam*). Indeed, in *Ank Bey El II*, the SDNY court ordered Plaintiff to "show cause why he should not be barred from filing any further actions in this Court concerning the [Property] and the related foreclosure proceedings without obtaining permission from this Court

to file his complaint." *Bey El II*, 2019 WL 4805214, at *3.  While the SDNY ultimately barred Plaintiff from filing further actions in that court related to the Property, Plaintiff was first given notice and the opportunity to be heard.

Thus, consistent with *Ank Bey El II*, the undersigned respectfully recommends that Plaintiff be directed to show cause as to why the Court should not bar him from filing further actions in the EDNY concerning the Property without first obtaining permission from this Court to file such complaints.  *See Bey El II*, 2019 WL 4805214, at *3 ("Within thirty days of the date of this order, Plaintiff must submit to this Court a declaration setting forth good cause why the Court should not impose this injunction upon him.").  As noted *supra*, the undersigned respectfully recommends that in Plaintiff's response to such an order, Plaintiff shall address, *inter alia*, why he again appears to be relying on, at minimum, a seemingly fabricated USDA document.  If Plaintiff fails to submit a response to the order or if Plaintiff's response fails to set forth good cause as to why the injunction should not be imposed, the undersigned respectfully recommends that Plaintiff be barred from filing any further actions in the EDNY concerning the Property and the related foreclosure proceeding, unless he first obtains permission from this Court to do so.  *See id.* ("If Plaintiff fails to submit a declaration within the time directed, or if Plaintiff's declaration does not set forth good cause why this injunction should not be entered, he will be barred from filing any further actions in this Court concerning the [Property] and the related foreclosure proceeding, unless he obtains permission from this Court to do so").

## VI.    Conclusion

Accordingly, the undersigned respectfully recommends that Defendant's motion to dismiss be granted, and Plaintiff be denied leave to file an amended complaint.  The undersigned also respectfully recommends that Plaintiff be directed to show cause as to why the Court should not

bar him from filing further actions in the EDNY concerning the property located at 393 Montauk Avenue, Brooklyn, New York without first obtaining permission from this Court to file such a complaint.  In Plaintiff's response to such an order, the undersigned respectfully recommends that Plaintiff address, *inter alia*, why he again appears to be relying on, at minimum, a seemingly fabricated USDA document.

The undersigned further respectfully recommends that Plaintiff be cautioned that if Plaintiff fails to submit a response to the order to show cause or if Plaintiff's response fails to set forth good cause as to why the injunction should not be imposed, the undersigned respectfully recommends that Plaintiff be barred from filing any further actions in EDNY concerning the property located at 393 Montauk Avenue, Brooklyn, New York and the related foreclosure proceeding, unless he first obtains permission from this Court to do so.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Defendant's counsel to serve a copy of this Report and Recommendation by first-class mail and overnight mail on Plaintiff and to file proof of service on ECF by December 12, 2025.  Copies shall be served at the following address:

> Yashua Ank Bey El
> 1623 Flatbush Avenue, Suite 263
> Brooklyn, NY 11210

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Gonzalez.  Failure to file objections within fourteen days will preclude further review of this Report and Recommendation either by the district court or the Second Circuit.  *See Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall

file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:      Brooklyn, New York          **SO ORDERED.**
December 11, 2025

                                             */s/ Joseph A. Marutollo*
                                             JOSEPH A. MARUTOLLO
                                             United States Magistrate Judge